**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRYAN BUTAKIS, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>NVR, INC., d/b/a NVHOMES, NVR MORTGAGE FINANCE, INC., and MUNICAP, INC.,<br><br>       Defendants. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Bryan Butakis ("Plaintiff") brings this action against Defendants NVR, Inc., d/b/a/ NVHomes, NVR Mortgage Finance, Inc., and MuniCap, Inc. (hereinafter, "Defendants"), by and through his attorneys, individually and on behalf of all others similarly situated, and alleges the following based on personal knowledge as to his own facts, and upon the investigation of counsel as to all other matters.

**INTRODUCTION**

1.    This is a class action lawsuit brought by Plaintiff on behalf of himself and a class of current and former property owners at the Greystone in West Chester, Pennsylvania ("Greystone").

2.    The Greystone is a development of new construction homes and townhomes. In order to purchase a property at the Greystone, prospective purchasers are required to reserve a specific lot number. After reserving the lot, a down payment must be made to secure the property and allow construction to begin. Depending on the timeline for construction, closing on the property can take several months.

1

3. The properties at the Greystone are purportedly subject to a "special assessment" pursuant to the Neighborhood Improvement District Act 73 P.S. § 831 *et seq.* ("NID"). The purpose of NID is to allow for the creation of assessment-based neighborhood improvement districts to increase revenue available for improving neighborhoods.

4. Defendants, however, failed to disclose the material terms of the special assessment at the Greystone to prospective purchasers. Defendants' failures include: failing to adequately disclose the existence of the special assessment; failing to disclose that any closing credits obtained by using Defendant NVR Mortgage Finance, Inc. could not be used to pay off a portion of the special assessment; and failing to disclose that the special assessment would incur interest unless paid in full immediately.

5. Plaintiff, on behalf of himself and all others similarly situated, brings this action for Defendants' violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*; and the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.*; and for breach of contract, fraud, and negligent misrepresentation.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges claims arising under the laws of the United States, including 15 U.S.C. § 1601. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because: Defendants transact business in this District, the acts and omissions giving rise to this action occurred in this District, Defendants are subject to personal jurisdiction in this District, and thus Defendants are deemed to be citizens of this District. Additionally, Defendants have advertised in

this District and have received substantial revenue and profits from the Greystone; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

8. This Court has personal jurisdiction over Defendants because they conduct substantial business in the District and a substantial part of the acts and omissions complained of occurred in the District.

## THE PARTIES

### *Plaintiff Bryan Butakis*

9. Plaintiff Bryan Butakis is a resident of the Commonwealth of Pennsylvania, and currently resides in West Chester, Pennsylvania.

10. In January of 2021, Plaintiff toured models at the Greystone and, subject to learning more about the properties and fees, was interested in purchasing a property. Plaintiff interacted with Karen, an employee of Defendant NVR, Inc., regarding the features of the homes and the fees and costs associated with the property.

11. On February 5, 2021, Plaintiff reserved a parcel at the Greystone by placing a down payment for $68,100.00.

12. Prior to paying the down payment, Karen informed Plaintiff that there was a special assessment associated with the property that Plaintiff would be required to pay, and that it was estimated to be $49,000, and that Plaintiff would be required to pay approximately $1,000 to $1,200 per year on the special assessment. Karen did not inform Plaintiff that the special assessment would be subject to interest if not paid in full at closing. In fact, Plaintiff inquired if the special assessment was subject to interest, and Karen responded that the special assessment was not subject to interest.

13.     Both before and after making his down payment, Plaintiff was informed that if he selected NVR Mortgage Finance, Inc. as Plaintiff's mortgage servicer, that Plaintiff would receive a $25,000 credit toward closing costs. Plaintiff was further informed that any remaining credits could be applied to the special assessment at the time of closing. Based on this representation, Plaintiff selected NVR Mortgage Finance, Inc. as Plaintiff's mortgage servicer.

14.     After Plaintiff was connected with a representative of NVR Mortgage Finance, Inc., he was informed that he could not use the balance of the $25,000 credit toward closing costs, contrary to Karen's representations.

15.     Plaintiff closed on his property in July 28, 2021. At the time of closing, Plaintiff signed a one-page document that related to the special assessment. That document failed to disclose that the special assessment was subject to interest at all, and also failed to disclose the purported interest rate. In pertinent part, the document states:

> As the purchaser of the real property located at the street address set forth above, you are obligated to pay the Woodlands at Greystone Neighborhood Improvement District (the "NID" or the "District") Special Assessments to the Woodlands at Greystone Neighborhood Improvement District Management Association (the "NIDMA"), for public improvements undertaken for the benefit of the property within the District created under the Commonwealth of Pennsylvania's Statute Title 73 P.S. §831 *et seq.*, as amended.
>
> <u>THE PRINCIPAL AMOUNT OF THE SPECIAL ASSESSMENT AGAINST YOUR PROPERTY FOR PUBLIC IMPROVEMENTS IS $49,683.84, WHICH MAY BE PAID IN FULL AT ANY TIME; HOWEVER, IF NOT PAID IN FULL, IT WILL BE DUE AND PAYABLE IN ANNUAL INSTALLMENTS EACH YEAR OVER THE TERM OF THE SPECIAL ASSESSMENT FOR YOUR PROPERTY.</u>
>
> The current annual payment is $2,187.09. More information about the Special Assessments, including the amounts and due dates, may be obtained from the NID Administrator or the NIDMA.
>
> Your failure to pay any Special Assessment, or any annual installment thereof, may result in penalties and interest being added to what you owe and could result in a lien on and the foreclosure of your property.

16. The document further notes that interest will only be assessed in the event of the failure to pay an installment of the special assessment, which "may result in penalties and interest being added to what you owe and could result in a lien and the foreclosure of your property."

17. After moving into his property, Plaintiff received a schedule of payments related to the special assessment in February of 2022. For the first time, Plaintiff was informed that the special assessment carried interest. Over the life of the special assessment, Plaintiff would be required to pay an additional $46,483.34 in interest, as well as $4,935.56 in previously undisclosed "administrative expenses," for a total payment amount of $100,831.89.

18. At no time did Defendants or any of their representatives inform Plaintiff that the special assessment carried interest prior to February of 2022.

### *Defendants*

19. Defendant NVR, Inc., d/b/a NVHomes is incorporated under the laws of the state of Delaware with its principal place of business located at 11700 Plaza America Drive, Suite 500, Reston, VA 20190.

20. On its website, Defendant NVR, Inc. states it "operates in two business segments: homebuilding and mortgage banking. The homebuilding unit sells and constructs homes under the Ryan Homes, NVHomes and Heartland Homes brands. As a corporate entity, NVR, Inc. provides various support functions for each of its sub-entities. These include sales and marketing support, vital human resource specialists, and an advanced information technology department, which provide a network of resources utilized by NVR, Inc. holdings."[1]

21. Defendant NVR Mortgage Finance, Inc. ("NVR Mortgage") is incorporated under the laws of the state of Delaware with its principal place of business located at 11700 Plaza

---

[1] *See* https://www.nvrinc.com/ (last visited July 28, 2022).

5

America Drive, Suite 500, Reston, VA 20190. NVR Mortgage operates branches in the metropolitan areas in which NVR has homebuilding operations. NVR Mortgage's sole focus is to serve the needs of NVR homebuyers."[2]

22. MuniCap, Inc. is a "public finance consulting firm based in Columbia, Maryland that specializes in the public finance aspects of redevelopment. MuniCap is headquartered in Columbia, Maryland, with additional offices located in Dallas, Texas, Charleston, South Carolina, Pittsburgh, Pennsylvania, and Richmond, Virginia."[3] Upon information and belief, Defendant MuniCap, Inc. is the entity that was responsible for the creation the special assessment at issue in this litigation, is responsible for maintaining and utilizing the special assessment fund on behalf of West Goshen township, and likely contributed to drafting the disclosure described herein.

23. Defendants engage in continuous and substantial business throughout the United States, including in Pennsylvania.

**FACTUAL ALLEGATIONS**

24. The Greystone in West Chester, Pennsylvania is a new construction community of homes consisting of "Townhomes, Luxury Single-Family Homes, and Main-Level Owner's Suite Homes."[4]

25. The Greystone is "[s]ituated on a 100-year-old estate, this new community is set amid a 163-acre nature preserve with three lakes, nearly seven miles of walking trails and beautiful stone bridges that cross winding creeks."[5]

---

[2] *Id.*
[3] *See* http://www.municap.com/about-company-overview.htm (last visited July 28, 2022).
[4] *See* https://www.nvhomes.com/new-homes/communities/10222120151692/pennsylvania/west-chester/greystone (last visited July 28, 2022).
[5] https://www.nvhomes.com/new-homes/communities/10222120151379/pennsylvania/west-chester/greystone-carriage (last visited July 28, 2022).

6

26. Typical of all new constructions, purchasing a home at the Greystone is done in various phases.

27. In order for a prospective purchaser to purchase a home, they must reserve the lot. This entails communicating with Defendants' sales representatives who maintain a sales office at the property regarding the features, touring model homes, and looking at sales brochures created and disseminated by Defendants. In order to complete the reservation process at the Greystone, prospective purchasers are often required to provide Defendants with bank account statements or other documents that demonstrate they are financially able to make a down payment and secure financing.

28. After reserving a specific lot, the prospective purchasers are then required to pay a down payment and sign a contract to officially secure the property and to allow Defendants to begin constructing the home (if it has yet to be constructed) and ultimately to proceed toward closing.

29. At closing, Defendants provide purchasers with various disclosures related to the property, including the purchase agreement, deed, the mortgage, and any applicable disclosures related to the property.

30. For properties at the Greystone, a fund was purportedly created pursuant to the Neighborhood Improvement District Act ("NID"). In order to provide capital for the fund, assessments are paid by homeowners. When improvements to public areas, such as roadways, are needed, the funds are disbursed.

31. While special assessments are perfectly legal, sellers and lenders are required to adequately disclose the existence of the special assessment and other material details of the assessments, including whether the assessments bear interest and, if so, what the interest rate is,

whether it is a fixed rate or variable rate, so that prospective purchasers can make an informed decision regarding whether to purchase the property.

32. Defendants failed to appropriately disclose the material terms of the special assessment until after closing is complete and the new homeowners have taken ownership of their properties.

33. After springing the existence of the special assessment on future homeowners before closing, Defendants' representatives assured them that the special assessment would not be subject to interest and could be paid over an extended period of time with no penalties.

34. In addition, Defendants' representatives inform homeowners that if they decide to obtain their mortgages from NVR Mortgage – of which Defendant NVR, Inc. is the parent company – they will receive a credit of $25,000 toward closing costs. Defendants' sales representatives represented that any unused portion of the $25,000 could be used to paying the special assessment. Defendants made these representations with the intent to induce Plaintiff and the Class to utilize NVR Mortgage, which would further enrich Defendants at the expense of Plaintiff and the Class.

35. The promise of a $25,000 credit was illusory as Defendants knew that the total closing costs would not utilize the entire amount. The unnecessarily large $25,000 credit was promised in an attempt to ease the blow of the improperly disclosed special assessment to Plaintiff and the Class, but in reality, was another concealment by Defendants.

36. At closing, Defendants provided a one-page document that related to the special assessment, which is reproduced above.

37. The document states that "as the purchaser of the real property located at the street address set forth above, you are obligated to pay the Woodlands at Greystone Neighborhood

Improvement District (the "NID" or the "District") Special Assessments to the Woodlands at Greystone Neighborhood Improvement District Management Association (the "NIDMA"), for public improvements undertaken for the benefit of the property within the District created under the Commonwealth of Pennsylvania's Statute Title 73 P.S. §831 *et seq.*, as amended."

38. The document fails to state that the special assessment will be subject to interest if not paid in full at the time of closing.

39. The only mention of interest is in the context of a homeowner failing to make timely payments, which authorizes the collection of late fees in interest only in the event a homeowner misses a scheduled payment: "Your failure to pay any Special Assessment, or any annual installment thereof, may result in penalties and interest being added to what you owe and could result in a lien on and the foreclosure of your property."

40. After closing is complete and the homeowner takes possession of their property, they receive a letter in the mail several months later. The letter, for the first time, discloses that unless the special assessment is paid in full, it will be subject to interest and administrative expenses. For Plaintiff, the additional interest is approximately $48,000 and the administrative expenses are approximately $5,000, yielding an additional $53,000 that must be paid over 27 years.

## CLASS ALLEGATIONS

41. Plaintiff brings this action on his own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2), and/or 23(b)(3).

> **Nationwide Class:**
> All persons in the United States that purchased properties at the Greystone in West Chester, Pennsylvania.

42. In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure, Rule 23(c)(5), Plaintiff seeks to represent the following state class only in the event

9

that the Court declines to certify the Nationwide Class above. Specifically, the State Class is defined as:

> **Pennsylvania Class:**
> All persons or entities in Pennsylvania that purchased properties at the Greystone in West Chester, Pennsylvania.

43.     The Nationwide and Pennsylvania Classes shall be collectively referred to herein as the "Class."  Excluded from the Class are Defendants, their affiliates, employees, officers and directors, and the Judge(s) assigned to this case.  Plaintiff reserves the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

44.     Numerosity:  Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that at least hundreds of persons have purchased properties at the Greystone.

45.     Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, without limitation:

   a. Whether Defendants failed to disclose that the special assessments on the properties sold at the Greystone were subject to interest if not paid in full;

   b. Whether Defendants misrepresented that the closing credits provided by NVR Mortgage could be used to pay off the special assessment;

   c. Whether Defendants adequately and timely disclosed the existence and terms of the special assessment;

    d. Whether Defendants' conduct violates the Truth in Lending Act;

    e. Whether Defendants' conduct violates the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

    f. Whether Defendants breached its contracts with Plaintiff and the Class; and

    g. Whether Defendants' actions constitute common law fraud; and

    h. Whether Defendants' actions constitute negligent misrepresentation.

46. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff purchased a property at the Greystone, as did each member of the Class. Furthermore, Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

47. <u>Adequacy</u>: Plaintiff is an adequate representative because his interests do not conflict with the interests of the Class, he has retained counsel competent and highly experienced in complex class action litigation, including consumer litigation, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

48. <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast,

the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' sales records and contracts with the purchasers of properties at the Greystone.

49. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE TRUTH IN LENDING ACT
### 15 U.S.C. §§ 1601, *et seq.*
**(On Behalf of the Nationwide Class or, Alternatively, the Pennsylvania Class)**

50. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

51. Pursuant to the Truth in Lending Act ("TILA") and the regulations promulgated thereunder, Defendants were required to make certain disclosures in connection with the special assessment at the Greystone setting forth, among other things, that the special assessment carried interest and the interest rate.

52. Defendants are "creditors" under the TILA.

53. Plaintiff and the class are "consumers" under the TILA.

54. Consumer credit refers to credit that an individual uses primarily for personal, family, or household purchases, such as a home mortgages, among others.

55. Pursuant to 15 U.S.C. § 1638(b)(2)(A), any credit that is secured by the dwelling of a consumer must be accompanied by the relevant, material terms and provided at least 7 business days before consummation of the transaction.

56.     Pursuant to 15 U.S.C. § 1638(b)(2)(C), any variable interest rates must be, *inter alia*, disclosed with a payment schedule with the statement "Payment Schedule: Payments Will Vary Based on Interest Rates Changes."

57.     Pursuant to 12 C.F.R. § 226.17(b), all required disclosures related to the special assessment were required to be disclosed prior to the consummation of the transaction. These disclosures include the annual percentage rate of interest, the finance charge, the amount financed, and the total number of payments.

58.     Defendants failed to identify that the special assessment was subject to interest, the interest rate, the administrative charges, a breakdown of the total payment, and a breakdown of the total number of payments.

59.     The disclosures relating to the special assessment were deceptive in that they failed to identify the special assessment was subject to interest, the interest rate, the administrative charges, a breakdown of the total payment, and a breakdown of the total number of payments.

60.     Defendants failed to disclose that the special assessments were subject to interest if not paid off in full at the time of closing.

61.     Plaintiff did not learn that the special assessment was subject to interest until he received a letter in February of 2022. Plaintiff had no reason to believe that the special assessment was subject to interest because, *inter alia*, Defendant NVR, Inc.'s sales representatives affirmatively represented to Plaintiff that the special assessment was not subject to interest.

62.     As a result of Defendants' violations of TILA, Plaintiff and the Class have been harmed and are entitled to injunctive relief and to recover actual damages, statutory damages and attorneys' fees, pursuant to 15 U.S.C. § 1640.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
## 73 P.S. §§ 201, *et seq.*
### (On Behalf of Nationwide Class or, alternatively, the Pennsylvania Class)

63. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

64. Plaintiff and the Class are persons pursuant to § 201-2(2).

65. The acts complained of herein were perpetrated by Defendants in the course of trade or commerce pursuant to § 201-2(3).

66. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits unfair or deceptive acts or practices, including:

   a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have (§ 201-2(4)(v));

   b. Advertising goods or services with intent not to sell them as advertised (§ 201-2(4)(ix));

   c. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions (§ 201-2(4)(xi)); and

   d. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (§ 201-2(4)(xxi)).

67. Defendants engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated the UTPCPL. Specifically, Defendants violated the UTPCPL as alleged throughout this Complaint by misrepresenting and omitting that special assessment was subject to interest, that the special assessment was part of the purchase of a property at the Greystone, and that closing credits could be used to pay down the special assessment balance at the time of closing.

68. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the properties at the Greystone.

69. Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public.

70. Defendants knew of the existence of the special assessment, knew that the special assessment would carry interest if not paid in full, and knew that any remaining closing credits obtained by using NVR Mortgage could not be used to pay any portion of the special assessment, yet concealed and misrepresented these material facts to Plaintiff and the Class.

71. Plaintiff and the Class reasonably relied on Defendants' misrepresentations and omissions of material facts when deciding to purchase properties at the Greystone. Had Plaintiff and the Class known of the special assessment and the pertinent details, they would have not purchased properties at the Greystone or would have paid less for them.

72. Defendants owed Plaintiff and the Class a duty to disclose the truth about the pertinent details of the special assessment because Defendants: (a) possessed exclusive knowledge of it; (b) intentionally concealed it from Plaintiff and the Class; and/or (c) made incomplete representations regarding the special assessment while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

73. Plaintiff and the Class suffered injury in fact to a legally protected interest. As a result of Defendants' conduct, Plaintiff and the Class were harmed and suffered actual damages in the form of the (a) being forced to pay the special assessments; (b) being forced to pay interest on

the special assessments; and (c) being unable to use any balance of their closing credits to pay a portion of the special assessment balance.

74. As a result of Defendants' conduct, Plaintiff and the Class were harmed and suffered actual damages as a result of Defendants' misrepresentations and omissions.

75. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the Class have suffered and will continue to suffer injury in fact and/or actual damages.

76. Defendants' unlawful acts and practices complained of herein affect the public interest.

77. Defendants are liable to Plaintiff and the Class for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs under 73 P.S. § 201-9.2(a). Plaintiff and the Class are also entitled to an award of punitive damages given that Defendants' conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT
**(On Behalf of Nationwide Class or, alternatively, the Pennsylvania Class)**

78. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

79. Defendants and Plaintiff and the Class entered into contracts that governed the purchase of properties at the Greystone.

80. Those contracts were drafted by Defendants, and thus any ambiguity is construed against Defendants as the drafters.

81. Plaintiff was provided with a one-page document regarding the special assessment. That page failed to disclose that the special assessment was subject to interest.

16

82. Defendants breached their contracts with Plaintiff and the Class by failing to disclose all relevant contract terms, including that the special assessment was subject to an undisclosed interest charge, and further failed to disclose the applicable interest rate.

83. As a result of Defendants' breach of contract, Plaintiff and the Class have been harmed and suffered damages, including placing deposits and purchasing homes they otherwise would not have purchased, paying special assessments that were not part of the relevant contracts, and paying interest on the special assessments.

## FOURTH CAUSE OF ACTION
## FRAUD
### (On Behalf of Nationwide Class or, alternatively, the Pennsylvania Class)

84. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

85. Defendants made material misrepresentations and omissions concerning the special assessment at the Greystone. Defendants failed to disclose that the special assessment was subject to interest, that the special assessment was part of the purchase of a property at the Greystone, and that closing credits could be used to pay down the special assessment balance at the time of closing.

86. Rather than inform potential customers of the truth regarding the special assessment, Defendants concealed material information related to the special assessment.

87. As a result, Plaintiff and the Class were fraudulently induced to purchase properties at the Greystone.

88. These misrepresentations and omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiff and the Class rely on them.

89. Defendants' misrepresentations and omissions were material because the special assessment has a substantial impact on the decision to purchase a property at the Greystone.

Defendants omitted this material information to drive up sales, as consumers would not have purchased properties at the Greystone, or would have paid substantially less for them, had they known the truth.

90. Although Defendants had a duty to ensure the accuracy of information regarding the special assessment, they did not fulfill their duties.

91. Plaintiff and the Class reasonably relied on these omissions and suffered damages as a result.

## FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
**(On Behalf of Nationwide Class or, alternatively, the Pennsylvania Class)**

92. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

93. Defendants had a duty to provide honest and accurate information regarding the existence and terms of the special assessment at the Greystone so potential customers could make informed decisions about whether to purchase a property at the Greystone.

94. Defendants specifically and expressly misrepresented material facts to Plaintiff and the Class regarding whether the special assessment was subject to interest, that the special assessment was part of the purchase of a property at the Greystone, and that closing credits could be used to pay down the special assessment balance at the time of closing.

95. Defendants knew, or in the exercise of reasonable diligence, should have known, that the ordinary and reasonable consumer would be misled by Defendants' misleading and deceptive conduct.

96. Plaintiff and the Class justifiably relied on Defendants' misrepresentations and have been damaged thereby in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court:

1. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class, as defined above;

2. Appoint Plaintiff as the representative of the Class and his counsel as Class Counsel;

3. Award all actual, general, special (including treble, where applicable), incidental, statutory, and consequential damages to which Plaintiff and the Class are entitled;

4. Award pre-judgment and post-judgment interest on such monetary relief;

5. Grant appropriate injunctive and/or declaratory relief;

6. Award reasonable attorneys' fees and costs; and

7. Grant such further relief that this Court deems appropriate.

Dated: July 28, 2022

Respectfully submitted,

By: */s/ Joseph B. Kenney*
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: 888-711-9975
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

*Attorneys for Plaintiff and the Putative Class*