IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN BUTAKIS, on behalf of | : | CIVIL ACTION |
| himself and all others | : | NO. 22-2971 |
| similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| NVR, INC., et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    April 5, 2023

## I.   INTRODUCTION

Plaintiffs Bryan Butakis and Joseph Hillen (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this putative class action against NVR, Inc. and NVR Mortgage Finance Inc. (collectively "Defendants")[1] for their alleged fraudulent misrepresentation of the material terms of "Special Assessments," which they agreed to pay as part of their purchases of a newly constructed home at the Greystone community located in West Chester, Pennsylvania.

---

[1] NVR, Inc. and NVR Mortgage are separate corporations, but are affiliated companies and are oftentimes treated as one entity in the Amended Complaint, with the actions of one imputed to the other. See infra Sec. IV(C)(2).

Plaintiffs' Amended Complaint contains five counts: (I) Violations of the Truth in Lending Act ("TILA"); (II) Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; (III) Breach of Contract; (IV) Fraud; and (V) Negligent Misrepresentation. Defendants filed a motion to dismiss for failure to state a claim.

For the reasons explained herein, the motion to dismiss will be granted.

## II.   FACTUAL BACKGROUND[2]

The Greystone is a community of newly constructed homes in West Chester, Pennsylvania. See Am. Compl. ¶ 41; ECF No. 13. In order to purchase a home, prospective buyers must first reserve a lot. Id. at ¶ 44. After reserving the lot, prospective buyers are required to make a non-refundable down payment and sign a contract (the "Purchase Agreement") to secure the property. Id. at ¶ 45. After construction is complete, prospective buyers close on the home, allowing them to take possession. Id.

The owners of homes in the Greystone are subject to a Special Assessment that was created by the state legislature pursuant to the Neighborhood Improvement District Act, 73 Pa. Stat. Ann. § 831 ("NID"). Id. at ¶ 47. Once paid by the owners,

---

[2]   The facts alleged by Plaintiffs and asserted herein are accepted as true and viewed in the light most favorable to Plaintiffs.

the Special Assessments are then placed into a fund and used for public improvements. Id.

Plaintiffs allege two factual theories relating to the Special Assessment: (1) Defendants failed to inform prospective buyers that the Special Assessments were subject to interest if not paid in full at the time of closing; and (2) Defendant NVR, Inc. represented that a credit could be applied towards the Special Assessment at closing if Buyers selected NVR Mortgage, an affiliate of NVR, Inc., to finance the purchase. Id. at ¶¶ 11, 16, 24, 31.

A. **Special Assessment Interest**

In January 2021, Plaintiffs Butakis and Hillen visited the Greystone's sales office separately and spoke with sales representatives of Defendant NVR, Inc., who explained the features of the homes as well as the fees and costs associated with the purchase of the home. Id. at ¶ 10, 23. Thereafter, Plaintiffs made a down payment to reserve their respective lots and signed a packet of documents authored by Defendants, including a one-page document relating to the Special Assessment

that stated the total amount owed.[3] Id. at ¶ 11, 24. The document

relating to the Special Assessment is below:

As the purchaser of the real property located at the street address set forth above, you are obligated to pay the Woodlands at Greystone Neighborhood Improvement District (the "NID" or the "District") Special Assessments to the Woodlands at Greystone Neighborhood Improvement District Management Association (the "NIDMA"), for public improvements undertaken for the benefit of the property within the District created under the Commonwealth of Pennsylvania's Statute Title 73 P.S. §831 *et seq.*, as amended.

**THE PRINCIPAL AMOUNT OF THE SPECIAL ASSESSMENT AGAINST YOUR PROPERTY FOR PUBLIC IMPROVEMENTS IS $46,690.84, WHICH MAY BE PAID IN FULL AT ANY TIME; HOWEVER, IF NOT PAID IN FULL, IT WILL BE DUE AND PAYABLE IN ANNUAL INSTALLMENTS EACH YEAR OVER THE TERM OF THE SPECIAL ASSESSMENT FOR YOUR PROPERTY.**

The current annual payment is $2,055.34. More information about the Special Assessments, including the amounts and due dates, may be obtained from the NID Administrator or the NIDMA.

Your failure to pay any Special Assessment, or any annual installment thereof, may result in penalties and interest being added to what you owe and could result in a lien on the foreclosure of your property.

Id. at 11.[4]

According to the Amended Complaint, Plaintiff Butakis, but

not Plaintiff Hillen, asked a sales representative of NVR, Inc.

if the Special Assessment was subject to interest if not paid in

full, and the sales representative responded that the Special

Assessment was not subject to interest. See id. at ¶ 14. After

closing, Plaintiffs learned that their annual payment for the

Special Assessment was more than originally represented and

requested a schedule of payments related to the Special

---

[3] Non-party MuniCap, Inc. is a "public finance consulting firm based in Columbia, Maryland that specializes in the public finance aspects of redevelopment" and was voluntarily dismissed. Id. at ¶ 40.

[4] This image is Plaintiff Butakis' copy of the document. Plaintiff Hillen's copy is located at ¶ 24 of the Amended Complaint. The language is identical, except for the amount due.

Assessment. Id. at ¶¶ 18, 30. Only after receiving the schedule of payments, Plaintiffs learned for the first time that the Special Assessment was subject to significant interest.[5] Plaintiffs claim that they would have not purchased their homes, or would have paid substantially less for the homes, if they had been informed of the additional interest and fees due under the Special Assessment. See id. at ¶¶ 20, 21, 34.

### B. **Closing Credit**

Both before and after making down payments, Plaintiffs were informed that they would receive a credit toward closing costs that could be applied toward the Special Assessment if they selected NVR Mortgage as the mortgage company to finance the purchase.[6] Plaintiffs claim that this representation was meant to

---

[5] If this were so, Plaintiff Butakis would be required to pay an additional $46,483.34 in interest alone, as well as $4,935.56 in previously undisclosed "administrative expenses" for a total payment amount of $100,831.39, which was more than double the original amount Defendants originally disclosed to him. Id. at ¶ 18. Likewise, Plaintiff Hillen would be required to pay an additional $43,683.13 in interest alone, as well as $4,638.23 in previously undisclosed "administrative expenses" for a total payment amount of $94,757.68, which was nearly double the original amount Defendants originally disclosed to him. Id. at ¶ 30.

[6] From Amended Complaint, it is not clear who informed Plaintiffs of this fact. Plaintiff Butakis was informed that he would receive a $25,000 credit toward closing costs that could be applied toward the Special Assessment. Id. at ¶ 15. Plaintiff Hillen was informed that he would receive a $23,000 credit toward closing costs that could be applied toward the Special Assessment. Id. at ¶ 31.

entice Buyers to select NVR Mortgage. Based on that
representation, Plaintiffs selected NVR Mortgage as their
mortgage servicer. After the selection had been made, Mackenzie,
an NVR Mortgage representative, informed Plaintiff Butakis (and
perhaps Plaintiff Hillen) that he could not use the balance of
the credit toward the Special Assessment, contrary to prior
representations.[7] Id. at ¶ 16.

## III. LEGAL STANDARD

A party may move to dismiss a complaint for failure to
state a claim upon which relief can be granted. Fed. R. Civ. P.
12(b)(6). When considering such a motion, the Court must "accept
as true all allegations in the complaint and all reasonable
inferences that can be drawn therefrom, and view them in the
light most favorable to the non-moving party." DeBenedictis v.
Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal
quotation marks removed).

To withstand a motion to dismiss, the complaint's
"[f]actual allegations must be enough to raise a right to relief
above the speculative level." Bell Atl. Corp. v. Twombly, 550

---

[7] From the Amended Complaint, it is not clear whether Plaintiff
Butakis was informed prior to closing that he could not use the
credit from NVR Mortgage toward the Special Assessment. Compare
Am. Compl. ¶ 16 with ¶ 17. It is not clear if Plaintiff Hillen
was able to use the credit from NVR Mortgage toward the special
assessment, or if like Plaintiff Butakis, he was informed that
he could not use the credit toward the special assessment.

U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV.  DISCUSSION

### A.  <u>Count I: Violations of TILA, 15 U.S.C. § 1601, *et seq.*</u>

In Count I, the Plaintiffs seek injunctive relief and monetary damages for Defendants' alleged violations of the TILA. Defendants argue that this Count should be dismissed for failure to state a claim because the Special Assessment is not an extension of credit at all, and therefore, no requisite consumer credit transaction occurred. <u>See</u> Defs.' Mot. to Dismiss 8-19, ECF No. 15. Because Plaintiffs voluntarily concede their claim under the TILA, Count I will be dismissed. <u>See</u> Pls'. Resp. in Opp'n 2 n.1, ECF No. 17.

### B.  <u>Count III:[8] Breach of Contract</u>

Count III is a claim for breach of the Purchase Agreements under two theories, one based on purported express contract terms and the other premised upon a general duty of good faith and fair dealing. The parties agree that Pennsylvania law controls this claim. Under Pennsylvania law, "[i]t is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract[,] and, (3) resultant damages." <u>Meyer, Darragh,</u>

---

[8] Plaintiffs' second count, alleging violations of the PA UTPCPL, is discussed below in conjunction with their claims for fraud and negligent misrepresentation.

<u>Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone</u>
<u>Middleman, P.C.</u>, 137 A.3d 1247, 1258 (Pa. 2016).

As to the first theory in the Amended Complaint, Plaintiffs
allege that the Special Assessment Disclosures "failed to
disclose that the special assessment was subject to interest,"
such that "the explicit terms of Plaintiffs' and Class members'
contracts with Defendants do not include a provision requiring
them to pay interest on the special assessments." <u>See</u> Am. Compl.
¶¶ 114, 115; ECF No. 13. According to Plaintiffs, "by charging
interest on the special assessment, Defendants breached the
explicit terms of their express contracts with Plaintiffs and
Class members." <u>Id.</u> Defendants argue that Plaintiffs cannot
state a viable cause for breach of contract based upon a legal
requirement that exists entirely independent of the Purchase
Agreements between the parties.

From the pleadings, the crux of the case appears to be
about the sufficiency of disclosures, not the breach of any
existing contractual obligations by Defendants. Nowhere in the
Amended Complaint do Plaintiffs identify a specific provision in
the Purchase Agreement which Defendants failed to perform.
Therefore, Plaintiffs cannot state a breach of contract claim
under this theory.

As to the second theory, in Pennsylvania, the implied
covenant of good faith and fair dealing attaches only to

existing contractual obligations—it does not add new contractual duties. See David v. Neumann Univ., 187 F. Supp. 3d 554, 560-61 (E.D. Pa. 2016) ("Under Pennsylvania law, [e]very contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement . . . . But this obligation of good faith is tied specifically to and is not separate from the [express] duties a contract imposes on the parties . . . . Plaintiff has failed to identify a specific contractual duty imposed upon [Defendant]. Without an identified contractual obligation, the Court is unable to look at [Defendant's] actions or inactions to determine whether it has in fact adhered to those contractual duties in good faith." (internal quotation marks and citations omitted)); Andrichyn v. TD Bank, N.A., 93 F. Supp. 3d 375, 387 (E.D. Pa. 2015) ("[T]he covenant [of good faith and fair dealing] cannot be used to override express contractual terms or add new terms to an agreement . . . . Rather, it can only impose an obligation consistent with other mutually agreed upon terms in the contract." (internal quotation marks and citations omitted)).

Because Plaintiffs have not identified any express contractual obligation owed by Defendants that has been breached, the related theory of breach of the implied covenant of good faith and fair dealing also fails. Accordingly, Count III will be dismissed.

   C. **Count II: Violation of the UTPCPL; Count IV: Fraud; and
      Count V: Negligent Misrepresentation**

   Plaintiffs bring two claims against Defendants stemming from
fraud, or alternatively, deceptive conduct based on violations
of the PA UTPCPL (Count II) and common law fraud in the
inducement to enter the Purchase Agreement (Count IV).
Plaintiffs also assert a claim for negligent misrepresentation
(Count V).[9]

---

[9] The PA UTPCPL includes nearly two dozen unfair acts and
practices that may suscept one to liability under the statute,
but generally requires a plaintiff to show that "(1) they
purchases or leased 'goods or services primarily for a personal,
family, or household purpose'; (2) they suffered an
'ascertainable loss of money or property'; (3) the loss occurred
'as a result of the use or employment by a vendor of a method,
act, or practice declared unlawful by' the CPL; and (4) the
consumer justifiably relied upon the unfair or deceptive
business practice when making the purchasing decision." Gregg v.
Ameriprise Fin., Inc., 245 A.3d 637, 646 (Pa. 2021) (quoting 73
P.S. §§ 201-9.2(a) & 201-8).

The "well settled" elements of a fraudulent misrepresentation
are that a plaintiff must show: "(1) a representation; (2) which
is material to the transaction at hand; (3) made falsely, with
knowledge of its falsity or recklessness as to whether it is
true or false; (4) with the intent of misleading another into
relying on it; (5) justifiable reliance on the
misrepresentation; and (6) resulting injury proximately caused
the reliance." Porreco v. Porreco, 811 A.2d 566, 570 (Pa. 2002)
(citations omitted).

And "[t]he elements of negligent misrepresentation differ from
intentional misrepresentation in that the misrepresentation must
concern a material fact and the speaker need not know his or her
words are untrue, but must have failed to make a reasonable
investigation of the truth of these words. . . . Moreover, like
any action in negligence, there must be an existence of a duty
owed by one party to another." Bortz v. Noon, 729 A.2d 555, 561
(Pa. 1999) (citations omitted).

1.   <u>Justifiable Reliance</u>

All three of these counts require Plaintiffs to establish justifiable reliance as an element of the claim. <u>See, e.g.</u>, <u>Gregg</u>, 245 A.3d at 646 ("Regardless of which unfair method of competition a plaintiff challenges in a private cause of action. . . [the PA UTPCPL] requires the plaintiff to establish justifiable reliance."); <u>Porreco</u>, 811 A.2d at 570-71 (requiring "justifiable reliance on the misrepresentation [and] resulting injury proximately caused by the reliance" to establish fraudulent misrepresentation; "reliance upon the representation of another must be reasonable"); <u>Bortz</u>, 729 A.2d at 561 (requiring "injury to a party acting in justifiable reliance on the misrepresentation" to establish negligent misrepresentation).

Defendants argue that Plaintiffs "statements of mere legal conclusions [regarding justifiable reliance] are insufficient to survive a motion to dismiss." In response, Plaintiffs argue that "justifiable reliance is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction." <u>Coleman v. Commonwealth Land Title Ins. Co.</u>, 684 F. Supp. 2d 595, 619 (E.D. Pa. 2010) (quoting Toy v. Metro.

Life Ins. Co., 928 A.2d 186, 208 (Pa. 2007)); Tran v.
Metropolitan Life Ins. Co., 408 F.3d 130, 141 (3d Cir. 2005)
("the issue of justifiable reliance[] presents disputed issues
of material fact that are simply more appropriate for resolution
by a jury than by a judge."). However, "[w]hether reliance was
justified 'may be determined as a matter of law.'" Servis One,
Inc. v. OKS Grp., LLC, No. 20-4661, 2021 WL 6069168, at *2 (E.D.
Pa. May 14, 2021) (Robreno, J.) (collecting cases). Thus, it is
necessary to address Defendants' arguments on the merits.

Defendants aver that Plaintiffs have not pleaded that they
were informed of the full impact of the Special Assessment at
the time they first reserved the lots at Greystone, but instead
claim to have been misled by sales representatives to believe
that the Special Assessment would not carry interest and that
obtaining a mortgage through NVR, Inc. would entitle Plaintiffs
to significant credits at closing that could be used to pay down
the Special Assessment. Defendants argue that the contractual
documents undermine Plaintiffs' contentions that they
justifiably relied upon any oral statement by NVR's sales
representatives in the purchases of their properties for three
reasons: (1) they were both told of, and signed, written
acknowledgements of, the existence of the Special Assessment
when they entered into their Purchase Agreements; (2) they both
specifically disclaimed in the Purchase Agreement there were no

other written or oral representations upon which they were
relying in contracting for the purchases of their properties;[10]
and (3) the contemporaneous disclosures of the Special
Assessment nowhere state there would be no interest charged on
that assessment, and instead speak specifically of the
"principal amount" of the Special Assessment.

In response, Plaintiffs argue that they pleaded sufficient
allegations that they justifiably relied on Defendants'
misrepresentations and omissions that the Special Assessment did
not carry interest or any other charges beyond the contractually
specified amount set forth in the one-page document included in
Defendants' Purchase Agreements. See Am. Compl. ¶¶ 11, 24
(alleging Defendants provided them with "a package of documents
authored by Defendants . . . [including] a one-page document
that related to the Special Assessment . . . . [that] failed to
disclose that the Special Assessment was subject to any

---

[10] Paragraph 16 of the Purchase Agreements states:

**Oral Statements or Promises.** Unless oral statements or
promises are written into this Agreement, they are not
enforceable under law. By including the terms below, You
and We [NVR, Inc.] are making them part of this Agreement
and agree to abide by these terms. THIS SECTION SHOULD
NOT BE LEFT BLANK IF YOU ARE RELYING ON ANY ORAL
STATEMENTS OR PROMISES. The following oral statements or
promises have been made in conjunction with this
Agreement and performance of each of these statements or
promises is incorporated into each party's obligation to
fully perform the terms of this Agreement: None[.]

14

interest."). Both Plaintiffs allege that they "relied upon the explicit language and statements therein, including the portion listing their annual payment amount without making any mention of interest charges." Id. at ¶ 26; see also id. at ¶¶ 12-13, 17 ("Based on the statements within the document, Plaintiff Butakis reasonably believed that the special assessment did not carry any interest or other fees . . . . Plaintiff Butakis reasonably relied on statements . . . made by Defendants"). Both Plaintiffs also allege that Defendants' on-site representatives failed to disclose to them that the Special Assessment carried interest and other charges, which they further relied upon when deciding to buy homes.[11] Finally, Plaintiff allege that Defendants' on-site representatives misrepresented that Plaintiffs could use closing credit toward the Special Assessment if they selected

---

[11] See id. ¶¶ 14, 17 ("Prior to paying the down payment, Karen informed Plaintiff Butakis that there was a special assessment . . . estimated to be $49,000 . . . Karen did not inform Plaintiff Butakis that the special assessment would be subject to interest and other fees if not paid in full at closing. In fact, Plaintiff Butakis inquired if the special assessment was subject to interest, and Karen responded that the special assessment was not subject to interest . . . Plaintiff Butakis reasonably relied on statements, which were made by Defendants' authorized sales representatives, and thereafter closed on his property on July 28, 2021"); ¶ 27 ("Plaintiff Hillen does not recall Caitlin or any other employee of Defendants' disclosing the special assessment or the fact that it carried substantial interest amounts . . . Plaintiff Hillen reasonably believed that the special assessment did not carry any interest or other fees, and that Caitlin's representations to him including failing to mention interest— were accurate.").

NVR Mortgage as the mortgage company to finance the loan.[12] <u>Id.</u> at ¶¶ 15, 31.

Courts within the Third Circuit have consistently found that similar allegations are sufficient to allege justifiable reliance. <u>See, e.g.</u>, <u>Coleman v. Commonwealth Land Title Ins. Co.</u>, 684 F. Supp. 2d 595, 619 (E.D. Pa. 2010) ("Plaintiffs allege sufficient facts of justifiable reliance at this stage by pleading that no Plaintiff would have knowingly paid a premium for title insurance that was higher than the premium that was actually due and owing." (internal quotation marks and citation omitted)); <u>Slemmer v. McGlaughlin Spray Foam Insulation, Inc.</u>,

---

[12] The "merger clause" provision in the Purchase Agreement disclaiming Defendants' liability for such oral representations made by its representatives are activated when a party to a contract tries to introduce parole evidence altering the explicit terms of the express contract. <u>See</u> <u>Kia v. Imaging Scis. Int'l, Inc.</u>, 735 F. Supp. 2d 256, 266–67 (E.D. Pa. 2010) (holding, "all preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . [which] constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence." (internal quotation marks omitted)). Plaintiffs argue that they are not attempting to alter the terms of their express contracts with Defendants by using their representatives' representations; instead, they argue that Plaintiffs' oral misrepresentation allegations do the exact opposite by showing that Defendants' representatives' statements were consistent with the misrepresentations contained in Defendants' express contracts—i.e., that the Special Assessment amounts did not carry any interest or other charges. Thus, Plaintiffs argue, Defendants' oral representation disclaimer does not apply to Plaintiffs' oral misrepresentation allegations because Plaintiffs do not make those allegations in an effort to alter the explicit terms of the parties' express contracts.

16

955 F. Supp. 2d 452, 461 (E.D. Pa. 2013) ("Plaintiffs . . .
plead that 'they would not have purchased SPF had the damaging
side effects been disclosed to Plaintiffs.' The Court agrees
that plaintiffs have alleged justifiable reliance upon specific
misrepresentations by defendants."); In re Marcus Hook Dev.
Park, Inc., 153 B.R. 693, 703 (Bankr. W.D. Pa. 1993)
("[Claimant] has alleged in the complaint that it justifiably
relied upon certain misrepresentations by defendants. Such
allegations must be regarded as true at this stage of the
case."); Hall v. Equifax Info. Servs. LLC, 204 F. Supp. 3d 807,
813 (E.D. Pa. 2016) (holding plaintiff sufficiently alleged
justifiable reliance by "clearly alleg[ing] that [defendant]'s
misrepresentation that his account would be satisfied induced
him to make payment."). Comparing the allegations in the Amended
Complaint with those which courts have found sufficient to
withstand a motion to dismiss, it appears that Plaintiffs have
plead sufficient allegations that they justifiably relied upon
Defendants misrepresentations and omissions.[13]

---

[13]   Defendants primarily argue Plaintiffs' Fraud-Based Claims
are based upon "pre-sale oral statements of NVR employees," to
argue that the Purchase Agreement's disclaimer of oral
statements or promises nullifies Plaintiffs' claims. See Defs.'
Mot. to Dismiss 25, ECF No. 15. However, as explained above,
Plaintiffs also allege written misrepresentations and omissions
in Defendants' Purchase Agreement and the one-page document
contained therein related to the Special Assessment.
      Defendants also argue that because those written
misrepresentations and omissions do not say interest will not be

2.   Rule 9(b) and Defendant NVR, Mortgage

Next, Defendants argue that even if Plaintiffs sufficiently pleaded justifiable reliance, the Plaintiffs' claims for violations of the PA UTPCPL (Count II), common law fraud in the inducement to enter the Purchase Agreement (Count IV), and negligent misrepresentation (Count V) center on the same core allegation that Plaintiffs were induced to purchase their properties by certain allegedly fraudulent misrepresentations (or omissions) made by Defendants during the purchase process. Defendants argue that because Plaintiffs fail to plead fraud, mistake, or deceit with the particularity required by Federal Rule of Civil Procedure 9(b), these claims should be dismissed.

Rule 9(b) states that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To properly plead a claim for fraud, a plaintiff must allege five elements: (1) "a specific false representation of material fact;" (2) "knowledge by the person who made it of its falsity;" (3) "ignorance of its falsity by the person to whom it was made;" (4) "the intention that it should be acted upon;" and (5) "that the plaintiff acted

---

charged, Plaintiffs could not have relied on them: "the contemporaneous disclosures of the Special Assessment nowhere state there would be no interest on that assessment." Id. at 26. But under Pennsylvania law, "the recipient of an allegedly fraudulent misrepresentation is under no duty to investigate its falsity in order to justifiably rely." Toy, 593 Pa. at 207.

upon it to his damage." Sun Co., Inc. (R & M) v. Badger Design &
Constructors, Inc., 939 F. Supp. 365, 369 (E.D. Pa. 1996)
(citing Shapiro v. UJB Fin. Corp., 964 F.3d 272, 284 (3d Cir.
1992)).

This standard requires one to plead "the circumstances of
the alleged fraud with sufficient particularity to place the
defendant on notice of the precise misconduct with which it is
charged" by pleading or alleging "the date, time and place of
the alleged fraud or otherwise inject[ing] precision or some
measure of substantiation into a fraud allegation." Schmidt v.
Ford Motor Co., 972 F. Supp. 2d 712, 720 (E.D. Pa. 2013)
(Robreno, J.) (quoting Frederico v. Home Depot, 507 F.3d 188,
2000 (3d Cir. 2007)). The Court has recognized that Rule 9(b)'s
heightened particularity standard may apply not only to claims
expressly pleaded as "fraud," but also to claims under the PA
UTPCPL and common law negligent misrepresentation, where such
claims sound in putatively fraudulent activity or
representations. See Whitaker v. Herr Foods, Inc., 198 F. Supp.
3d 476, 484 (E.D. Pa. 2016) (Robreno, J.) (collecting cases).

Plaintiffs' Amended Complaint provides insufficient detail
about Defendants' respective fraudulent misrepresentation.
Plaintiffs allege generally that "Defendants" made certain
"misrepresentations and omissions" to them "concerning the
special assessment at Greystone . . . ." without identifying

which Defendant made certain misrepresentations or took certain actions. See Am. Compl. ¶¶ 100-104, 107, 116, 119-121, 123-125, 128-131; ECF No. 13. Additionally, Plaintiffs assign supposed misrepresentations and omission to Defendants' representatives, implying that those representatives made statements on behalf of all Defendants when the Amended Complaint alleges that they were employed by NVR, Inc. only. Id. at ¶¶ 17, 19, 50-52, 93. Plaintiffs' only allegation against NVR Mortgage is that it purportedly did not abide by the alleged misrepresentations to Plaintiff Butakis, on behalf of an unnamed speaker, regarding the closing credit's potential application to his Special Assessment. Id. at ¶¶ 15-16, 64.

This method of collective pleading does not satisfy the requirements of Rule 9(b). See In re Suprema Specialties, Inc. Sec. Lit., 438 F.3d 256, 282 (3d Cir. 2006) ("[P]laintiffs' manner of pleading their claim collectively, through blanket allegations against numerous different defendants, runs afoul of the particularity requirements of ...Rule 9(b)."). In short, the allegations supporting Plaintiffs' fraud claim fail to place each defendant individually "on notice of the precise misconduct with which [he is] charged[.]" Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). As such, Defendants' motion to dismiss will be granted as to Counts II, IV, and V. These counts will be dismissed with leave to

amend due to the possibility that Plaintiffs may add additional
facts or provide plausible explanations to support a claim for
fraud by clarifying which Defendant is responsible for which
representations and/or behavior.

### D. Leave to Amend

Leave to amend should be freely granted unless there is an
apparent reason why it should not be, such as futility of
amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). Plaintiffs
will be granted leave to amend Counts II, III, IV, and V.

### V.   CONCLUSION

As explained above, Defendants' Motion to Dismiss will be
granted without leave to amend as to Plaintiffs' TILA claim
(Count I) and breach of contract claim (Count III). Defendants'
Motion to Dismiss will be granted with leave to amend as to
Plaintiffs' PA UTPCPL claim (Count II), breach of contract claim
(Count III), fraud claim (Count IV), and negligent
misrepresentation claim (Count V).

An appropriate order follows.