IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRYAN BUTAKIS,** *on behalf of himself and all others similarly situated, et al.,* | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 22-2971-KSM** |
| **NVR, INC.,** *doing business as NVHOMES,* | |
| Defendant. | |

<u>MEMORANDUM</u>

**Marston, J.**                                                                                      **April 11, 2025**

Plaintiffs Bryan Butakis and Joseph Hillen bring this putative class action on behalf of themselves and 75 other individuals who purchased homes at the Greystone subdivision in West Chester, Pennsylvania from Defendant, NVR, Inc. (Doc. No. 24.) They claim that NVR failed to disclose that the Greystone properties were subject to a special assessment, which would incur interest and other fees unless paid in full at the time of closing. (*Id.*) Plaintiffs, on behalf of the putative class, and NVR have negotiated a class action settlement and release agreement (the "Settlement Agreement") to resolve the claims raised in the Second Amended Complaint. (Doc. No. 47-3.) On December 3, 2024, the Court provisionally certified the class and preliminarily approved the Settlement Agreement. (Doc. No. 50.) Plaintiffs now seek final certification and approval. (Doc. No. 54.) In addition, they move for an award of attorneys' fees, reimbursement of expenses to class counsel, and a service award to Plaintiffs as the class representatives. (Doc. No. 51.) For the reasons below, the Court certifies the class, approves the terms of the Settlement Agreement, and grants the motion for attorneys' fees, reimbursement of expenses, and service awards.

I.    **BACKGROUND**

A.    **Procedural History**

On July 28, 2022, Plaintiffs filed this action against NVR and other parties which have since been dismissed.  (Doc. Nos. 1, 10, 28.)  The matter was originally assigned to the Honorable Eduardo C. Robreno, who oversaw multiple rounds of motions to dismiss and the close of the pleadings.  (*See* Doc. Nos. 15, 21, 22, 26, 28.)  On May 5, 2023, Plaintiffs filed the operative Second Amended Complaint asserting claims for fraud, misrepresentation, and violations of state consumer protection and privacy statutes.  (Doc. No. 24.)  In short, Plaintiffs alleged that they purchased homes at the Greystone subdivision from NVR.  Each property was subject to a fund created pursuant to the Neighborhood Improvement District Act ("NID"), and the fund was capitalized by special assessments paid by the property owners.  (*Id.* at ¶ 48.)  Plaintiffs claimed that before closing on their properties, NVR gave them a one-page "NID Disclosure" which represented that the special assessment could be "paid in full at any time," but if not paid at closing would be "due and payable in annual installments."  (*Id.* at ¶ 12.)  NVR allegedly did not disclose, however, that if paid in annual installments, the assessments would bear interest and fees.  (*See, e.g.*, *id.* at ¶¶ 14, 49, 56, 57.)

Two months after Plaintiffs filed the Second Amended Complaint, the matter was reassigned to the undersigned (Doc. No. 31), and on August 3, 2023, the Court entered a scheduling order to govern discovery and dispositive motions (Doc. No. 35).  The parties exchanged discovery, including interrogatories and document productions.  (*See* Doc. No. 47-2 at ¶ 12.)  And over the next five months, they engaged in three settlement conferences with Magistrate Judge Carol Sandra Moore Wells.  (*See* Doc. Nos. 37, 42, 44.)  During those conferences, the parties agreed to a settlement in principle, but did not discuss attorneys' fees or

service awards. (Doc. No. 47-2 at ¶ 14.) Instead, fees and awards were separately negotiated after the parties reached an agreement on relief for the settlement class. (*Id.*)

On July 22, 2024, Plaintiffs filed an unopposed motion for preliminary certification of the settlement class and preliminary approval of the class action settlement. (Doc. No. 47.) The Court held a hearing on the motion on November 13, 2024 (Doc. No. 49), and on December 3, 2024, the Court preliminarily certified a Rule 23 settlement class, approved the settlement terms, and authorized the settlement administrator to notify the class of the settlement. (Doc. No. 50.)

On February 18, 2025, Plaintiffs filed an unopposed motion for attorneys' fees and litigation expenses totaling $90,000 and approval of service awards to each class representative in the amount of $2,000. (Doc. No. 51.) Then, on March 24, 2025, Plaintiffs filed an unopposed motion for final certification of the class and approval of the settlement terms. (Doc. No. 54.) The Court held a fairness hearing with counsel on April 7, 2025. No class members attended the hearing.

### B.    Settlement Agreement

The Settlement Agreement identifies the following settlement class: "[A]ll persons who, in purchasing a home at the Greystone, received the NID Disclosure and settled on the home during the period beginning January 28, 2021, and ending on July 28, 2022." (Doc. No.47-3 at 10.) Within this class, there are four subclasses based on when each class member purchased a property at the Greystone and whether the special assessment will be paid in full as of the "Effective Date," which is the date that the Order accompanying this Memorandum is rendered a final judgment (i.e., "the successful exhaustion of all appeal periods without appeal or resolution of any appeals or certiorari proceedings in a manner upholding the Final Approval Order and Final Judgment"). (*Id.* at 5–6.)

    1.    <u>One Year Paid Off Subclass</u>: "[A]l persons who (i) settled on a home at the Greystone beginning July 28, 2021, and ending on July 28, 2022, and (ii) ha[ve] paid off the Special Assessment associated with the home in full before the Effective Date. This includes original purchasers but not subsequent purchasers in this period." (*Id.* at 7.)

    2.    <u>Added Six Month Paid Off Subclass</u>: "[A]l persons who (i) settled on a home at the Greystone beginning January 28, 2021, and ending on July 27, 2021, and (ii) ha[ve] paid off the Special Assessment associated with the home in full before the Effective Date. This includes original purchasers but not subsequent purchasers in this period." (*Id.* at 4.)

    3.    <u>One Year Still Paying Subclass</u>: "[A]l persons who (i) settled on a home at the Greystone beginning July 28, 2021, and ending on July 28, 2022, and (ii) ha[ve] not paid off the Special Assessment associated with the home in full before the Effective Date. This includes original purchasers but not subsequent purchasers in this period." (*Id.* at 7.)

    4.    <u>Added Six Month Still Paying Subclass</u>: "[A]l persons who (i) settled on a home at the Greystone beginning January 28, 2021, and ending on July 27, 2021, and (ii) ha[ve] not paid off the Special Assessment associated with the home in full before the Effective Date. This includes original purchasers but not subsequent purchasers in this period." (*Id.* at 4.)

This is not a common fund action. Instead, under the Settlement Agreement, every class member is entitled to receive two cash payments, which are calculated using a set formula for each subclass:

    1.    <u>One Year Paid Off Subclass</u>: (i) First payment = (NID payoff amount + amount already paid for interest + amount already paid for admin expenses) – NID Principal Amount stated in NID Disclosure; and (ii) Second payment = ((the sum of the interest and administrative fees the class member would have paid beginning the year after they paid off the NID through Year 9) – stated NID Principal Amount in NID Disclosure) x .0425 interest rate.

    2.    <u>Added Six Month Paid Off Subclass</u>: The same calculations as the One Year Paid Off Subclass but reduced by 45% to account for the litigation risk surrounding NVR's statute of limitations defenses.

3.    <u>One Year Still Paying Subclass</u>: (i) First payment = (sum of annual installments for Years 1 to 4 according to NID Annual Installment Schedule) – (annual payment stated on NID Acknowledgment Form x 4); and (ii) Second payment = (sum of annual installments for Years 5 to 9 according to NID Annual Installment Schedule) – (annual payments stated on NID Acknowledgment Form x 5) x .0425 interest rate

4.    <u>Added Six Month Still Paying Subclass</u>: The same calculations as the One Year Still Paying Subclass but reduced by 45% to account for the litigation risk surrounding NVR's statute of limitations defenses.

As these calculations reflect—and as the Court explained in the Order granting preliminary approval—the four subclasses are more easily understood as two primary subclasses: one subclass for class members who have paid off the special assessment and a second for class members who are still paying the special assessment.  (Doc. No. 50 at 3.)  Each primary subclass is then further divided in two: one division for class members who are potentially subject to NVR's statute of limitations defense (the "Added Six Month" subclasses) and one for class members who are not (the "One Year" subclasses).  (*Id.*)  Within each primary subclass (i.e., "Paid Off" and "Still Paying"), the base calculations are the same across both divisions, and it is only after this base calculation is made that the "Added Six Month" subclasses are subject to a 45% reduction to reflect the likelihood that NVR would have succeeded on its statute of limitations defenses if the matter went to trial.  (*See* Doc. No. 47-1 at 14–15.)

C.    **Notice**

The Settlement Agreement included a comprehensive notice plan, which was paid for by NVR and overseen by Class-Settlement.com, an experienced settlement administrator.  (Doc. No. 47-3 at 9; Doc. No. 50 at 5–6.)  NVR has identified 77 individuals, who qualify as settlement class members.  (Doc. No. 47-3 at 81–89 (identifying each class member by name, settlement date, NID payoff status, and calculating the total payment, then sorting those members by

5

subclass).)  On January 3, 2025, the administrator mailed a copy of the short form Notice of

Settlement to all 77 class members after comparing the list provided by NVR against the

National Change of Address database.  (*See* Declaration of Dorothy Sue Merryman ("Merryman

Decl.") at ¶ 8 (on file with Chambers).)  In addition, for the 36 members for whom NVR had an

email address, the settlement administrator also provided notice via email.  (*Id.* at ¶ 9; Doc. No.

50 at 6.)  One of the mailed notices was returned as undeliverable.  (Merryman Decl. at ¶ 10.)

The settlement administrator performed skip-tracing, but no updated address information could

be obtained for the member.  (*Id.*)  In addition to providing notice via mail, the settlement

administrator also created a case-specific settlement website where class members could access

additional information about the class action and submit a claim form.  (*See, e.g.*, Doc. No. 47-3

at 42.)  As of April 2, 2025, forty-eight members had submitted a claim form, which is roughly

62% of the settlement class.  (Merryman Decl. at ¶ 11.)  No settlement class member has

objected to or opted out of the Settlement Agreement.  (*Id.* at ¶ 12.)

    **D.**    **Release**

    If this Settlement Agreement is approved, class members who do not exclude themselves

will be bound by a release that is tailored to cover the claims that were asserted or that could

have been asserted by them related to the special assessment.  Specifically, the release provides:

> The parties intend that this Settlement Agreement will fully and
> finally dispose of the Lawsuit and the Released Claims. As of the
> Effective Date, each of the Releasing Parties will be deemed to have
> completely released and forever discharged the Released Parties,
> and each of them, from and for all the Released Claims.

(Doc. No. 47-3 at 21.)  The "Released Parties" include NVR and its related companies:

> "Released Parties" means NVR and each of its past, present, and
> future members, owners, direct and indirect parents, subsidiaries,
> managers, divisions, predecessors, successors, holding companies,
> and affiliated companies and corporations, and each of the past,

present, and future directors, officers, managers, members, employees, contractors, general partners, limited partners, investors, controlling persons, owners, trustees, principals, agents, associates, administrators, insurers, reinsurers, shareholders, attorneys, accountants, advisors, consultants, assignors, assignees, representatives, fiduciaries, predecessors, successors, divisions, joint ventures, or related entities of those companies.

(*Id.* at 8–9.)  Finally, the phrase "Released Claims" is defined as:

> [A]ny and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, latent or patent, actual or contingent, liquidated or unliquidated, punitive or compensatory, of every nature and description whatsoever, as of the date of the Final Approval Order, that arise out of or relate in any way to the Special Assessment, the NID Disclosure, or the Lawsuit, including without limitation any representations, disclosures, or other communications related to how the Special Assessment or NID Disclosure relate to the costs for the purchase or ownership or sale of homes in Greystone. . . .  The Released Claims exclude any claims for death, personal injury, property damage, subrogation, or future warranty claims by the Settlement Class Members unrelated to the Claims as defined in this Agreement.

(*Id.* at 8.)

## II.    FINAL CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES

### A.    Legal Standard

The Court may certify class actions for the sole purpose of settlement.  *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010) (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995)).  When parties present the court with a class settlement agreement, the court must first determine whether the requirements for class certification under Rule 23(a) and (b) are met, and separately

determine that the settlement is fair, reasonable, and adequate. *Then v. Great Arrow Builders, LLC*, 2:20-CV-00800-CCW, 2022 WL 562807 at *1 (W.D. Pa. Feb. 23, 2022) (citing *In re Nat'l Football Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014)).

Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure set forth the requirements for class certification. Under Rule 23(a), a class action is allowable only if:

> (1)    the class is so numerous that joinder of all members is impracticable;
>
> (2)    there are questions of law or fact common to the class;
>
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) ("All potential classes must initially satisfy four prerequisites to be certified: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."). Plus, the class must be currently and readily ascertainable based on objective criteria. *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

If the ascertainability and Rule 23(a) conditions are met, a case may proceed as a class action if one of the conditions of Rule 23(b) is also satisfied. Here, Plaintiffs seek class certification under Rule 23(b)(3), which requires that "the court find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Reyes*, 802 F.3d at 482 (explaining that plaintiff must demonstrate "predominance and superiority" for certification under Rule 23(b)(3)).

8

### B.    Analysis

Plaintiffs propose a class of 77 individuals who, "in purchasing a home at the Greystone, received the NID Disclosure and settled on the home during the period beginning January 28, 2021, and ending on July 28, 2022." (Doc. No. 47-3 at 10.) This class is ascertainable and meets all six requirements of Rules 23(a) and 23(b). The Court will address each issue in turn.

#### 1.    <u>Ascertainability</u>

Plaintiffs have the burden of showing, by a preponderance of the evidence, that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)). The class here is ascertainable because the parties used NVR's records to determine the exact number and identities of individuals who purchased properties at the Greystone subject to the special assessment during the defined time period. (*See* Doc. No. 47-3 at 81–89.)

#### 2.    <u>Rule 23(a) Requirements</u>

In addition to being ascertainable, the putative class must also satisfy the requirements of Rule 23(a): "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Reyes*, 802 F.3d at 482.

***Numerosity***

Although "[t]here is no magic number of class members needed for a suit to proceed as a class action," the Third Circuit has held that "numerosity is generally satisfied if there are more than 40 class members." *In re Nat'l Football League Players Concussion Inj. Litig. ("In re NFL")*, 821 F.3d 410, 426 (3d Cir. 2016). Here, the proposed class is sufficiently numerous

because it consists of 77 individuals.  (Doc. No. 47-3 at 81–89.)  The Court is satisfied that this is enough people to render joinder impracticable.  Fed. R. Civ. P. 23(a); *see In re NFL*, 821 F.3d at 426.

### Commonality

As the Third Circuit has explained, "[a] putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *In re NFL*, 821 F.3d at 426–27 (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)).  It is "easy enough" to meet the requirement, provided all members of the class have claims that are capable of class-wide resolution.  *Id.*  Commonality is met in this case because there are several common factual and legal questions, including whether NVR failed to adequately and timely disclose that the special assessment would be subject to interest and administrative expenses if paid in installments, whether NVR's disclosures (or lack thereof) violated Pennsylvania's consumer protection laws, and whether NVR's disclosures (or lack thereof) give rise to actionable fraud and/or misrepresentation claims.

### Typicality

There is a "low threshold" for typicality.  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001).  So long as "the interests of the class and the class representative are aligned," courts will find typicality even when class members' claims are only legally similar, and not factually similar.  *Id.*  Here, the representative Plaintiffs' claims are "virtually identical" to those of the class because their claims "arise from the same conduct"— each Plaintiff challenges the adequacy of NVR's disclosures related to the Special Assessment. *See In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2023 WL 6690705, at *4 (E.D. Pa. Oct. 12, 2023).  Thus, the typicality requirement is met.

***Adequacy of Representation***

      Courts considering adequacy of representation examine both the class representatives and "the qualifications of class counsel." *In re NFL*, 821 F.3d at 428.

      First, when considering the adequacy of class representatives, courts seek "to root out conflicts of interest within the class" and to "uncover conflicts of interest between the named parties and the class they seek to represent." *Id.* at 428, 430 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "A class representative must represent a class capably and diligently," but this is a low bar: "'a minimal degree of knowledge' about the litigation is adequate." *Id.* at 430 (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)). "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *In re Cmty. Bank of N. Va.*, 795 F.3d at 393 (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)).

      Here, the Court initially expressed concern about conflicts of interest between the representatives and the class because there are only two representatives for four subclasses. (*See* Doc. No. 50 at 3 n.1); *see also Amchem Prods., Inc.*, 521 U.S. at 625–26 (finding named parties were not adequate to act on behalf of all class members where "the interests of those within the single class are not aligned"); *In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 742–43 (2d Cir. 1992) ("The distinction between the subgroup that benefits from the payment priority and the subgroup that loses because of it, and the further distinction, imposed by the Settlement, between payment prospects for those in Level One compared to those in Level Two make it clear that there cannot be consent to a settlement imposing these distinctions upon all health claimants unless subclasses are established for the affected subgroups and consents are given by fair and

adequate representatives who have undivided loyalties only to members of their respective subclasses.").  But as noted previously, the four subclasses are more appropriately viewed as two primary subclasses (one for class members who have paid off the special assessment and one for class members who are still paying the special assessment), which are then further divided to account for NVR's statute of limitations defenses.  (Doc. No. 50 at 3 n.1.)  Plaintiff Butakis is the proposed representative for both divisions of the subclass of individuals who have paid off the special assessment.  And Plaintiff Hillen is the proposed representative for both divisions of the subclass of individuals who have not paid off the special assessment.

The Court now finds that each representative is adequate to represent both divisions of his respective subclass for settlement purposes.  Within each primary subclass, the legal claims, arguments, and recovery goals are almost entirely the same, and the only reason each subclass has been further divided is to account for NVR's potential statute of limitations defenses.  The proposed settlement reflects this, in that within each primary subclass, the base calculations are the same across both divisions, and it is only after this base calculation is made that the Added Six Month subclasses are subject to a 45% reduction. (See Doc. No. 47-1 at 14–15.) Accordingly, the Court finds no conflict of interest between the representative Plaintiffs and the other settlement class members—their interests are aligned in attempting to prove the factual allegations in the Second Amended Complaint, establishing NVR's liability, and reaching a settlement that reimburses class members according to the amount they have and/or would have paid in interests and fees on the special assessment.  In addition, the representative Plaintiffs have actively participated in the litigation of this case by searching for and producing documents, answering their lawyer's questions, and reviewing the numerous pleadings as well as the terms of the Settlement Agreement.  (Doc. No. 51 at 25.)

Second, with respect to class counsel, the important factors are whether the attorneys "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re GMC*, 55 F.3d at 801. The Third Circuit has indicated that courts should consider the non-exhaustive list of factors in Rule 23(g) for appointing counsel in determining the adequacy of representation. *See In re NFL*, 821 F.3d at 429. Those factors include counsel's work in the instant class action, experience in handling class actions or other kinds of complex litigation, knowledge of the applicable laws, and resources available for representing the class. Fed. R. Civ. P. 23(g)(1)(A). The court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, class counsel—Matthew D. Schelkopf, Esq., and Joseph B. Kenney, Esq., of Sauder Schelkopf LLC—are qualified to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). Schelkopf and Kenney diligently pursued this matter even before their appointment by conducting extensive investigations into the Greystone properties and the related special assessment, and afterward by opposing motions to dismiss, exchanging discovery, and negotiating a favorable Settlement Agreement for the putative class. (Doc. No. 47-2 at 4–6.) Indeed, as of January 31, 2025, class counsel had spent over 228 hours in diligent pursuit of this case. (Doc. No. 51-2 at 4.) Next, class counsel and others in their firm have substantial experience handling class litigation and litigating consumer protection cases. (*See id.* at 2–3.) Last, the parties worked with Judge Wells to facilitate arms' length settlement negotiations, which weighs in favor of finding adequacy. *See Fulton-Green*, 2019 WL 4677954, at *6 (collecting cases). Thus, the Court finds that the proposed class's interests have been

advanced by experienced, dedicated counsel, working at arms' length from NVR in accordance with Rule 23(a)(4).

* * *

In sum, the Court finds that the Rule 23(a) conditions for class certification are met here.

### 3.    <u>Rule 23(b)(3) Requirements</u>

In addition to meeting the requirements of Rule 23(a), the putative class must also satisfy Rule 23(b)(3), which requires the Court find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

***Predominance***

The key issue under the predominance factor is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  The Third Circuit has counseled that courts should be "more inclined to find the predominance test met in the settlement context."  *In re NFL*, 821 F.3d at 434 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc)).

Here, predominance is satisfied.  NVR's conduct is common to all class members, and all class members were allegedly harmed by that conduct.  As Plaintiffs note, "[a]t bottom, this case hinges on whether [NVR] misrepresented and/or omitted that the Special Assessment was subject to interest if not paid in full" at closing, and this determination will be made by looking to the "language of [NVR]'s written representations and omissions, which were substantially similar across all Settlement Class Members."  (Doc. No. 47-1 at 25.)  In addition, the proposed subclasses alleviate concerns about distinct issues that may arise among class members—

14

including the applicability of statutes of limitations—by grouping members together based on the relevance such questions.  Taken together, these common questions of law and fact predominate over individual factual questions, such as the specific degree of damages incurred.  *See Corra*, 2024 WL 22075, at *5 (holding that common questions predominated even though "there may be slight differences among class members regarding degree of damages or the exact type of injury suffered"); *Erby v. Allstate Fire & Cas. Ins. Co.*, Civil Action No. 18-4944-KSM, 2022 WL 14103669, at *8 (E.D. Pa. Oct. 24, 2022) (finding the predominance inquiry satisfied where "each Class Member's claim raises an identical question of law: whether Allstate's practice of not reimbursing sales tax on total loss leased vehicles violated Pennsylvania law").

***Superiority***

Last, the parties have demonstrated that "a class action mechanism is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  When evaluating this requirement, courts consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action."  *In re NFL*, 821 F.3d at 435 (citing Rule 23(b)(3)(A)–(D)).  Superiority can be satisfied where the settlement prevents "duplicative lawsuits and enables fast processing of a multitude of claims."  *Id.* (quoting *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 382 (E.D. Pa. 2015)); *see also Sullivan*, 667 F.3d at 312.

Here, these factors weigh in favor of class litigation.  There are 77 settlement class members, each of whom has a claim worth between $1,260 and $12,812.34.  (Doc. No. 47-3 at 81–89.)  Considering the "cost and complexity of the litigation," which has been hotly contested from the beginning, it "would be impractical to litigate on an individual basis."  *Corra*, 2024 WL

22075, at *5; *In re Wawa*, 2023 WL 6690705, at *5.  Plus, "where, as here, the Court is confronted with a request for settlement-only class certification, [the Court] need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial."  *Corra*, 2024 WL 22075, at *5 (quoting *Amchem*, 521 U.S. at 620) (cleaned up).  Thus, superiority is met in this case.

* * *

For these reasons, the Court find that the requirements of Rules 23(a) and 23(b)(3) are satisfied, and the Court certifies the class.

## III.    ADEQUACY OF CLASS NOTICE

Because the Court has granted final certification to the settlement class, the Court must now evaluate the adequacy of notice given to the class members.  *Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at *6 (E.D. Pa. Sept. 27, 2017).  For class notice to be adequate, it must meet two requirements.  First, Rule 23(c)(2)(B) requires that the class receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[1]  Fed. R. Civ. P. 23(c)(2)(B). Second, principles of due process "require[ ] that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *In re NFL*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  The notice documents must provide a detailed description of the settlement, the circumstances leading to it, and the consequences of

---

[1] In addition, Federal Rule of Civil Procedure 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members" of a proposed settlement agreement.  Fed. R. Civ. P. 23(e)(1). Because this requirement overlaps with the requirements of Rule 23(c)(2)(B), the Court considers these requirements together.

objecting or opting out.  *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 310–12 (3d Cir. 2004).

In preliminarily approving the Settlement Agreement, the Court found that the proposed notice plan met these requirements.  (*See* Doc. No. 50 at 4–6.)  Now that the plan has been executed, the Court sees no reason to change that conclusion.  After defense counsel gave the settlement administrator the names and physical addresses of the 77 class members, the administer sent copies of the short form notice to each member via first class mail, and as a supplement, emailed the short form notice to the 36 members for whom NVR had an email address.  (*Id.*; *see also* Merryman Decl. at ¶ 7.)  In addition to these methods, the long form notice was posted on the website created for this settlement class.  (*See* Doc. No. 50 at 4–6.)  The Court thus finds that the notice efforts here satisfied the requirements of Rule 23 and due process because notice via mail, email, and website publication represented "the best notice practicable under the circumstances and was reasonably calculated to provide actual notice to all class members."  *Lunemann v. Kooma III LLC*, No. CV 23-3704-KSM, 2024 WL 3744359, at *6 (E.D. Pa. Aug. 8, 2024).

The Court also finds that the content of the notice was sufficient.  The short form notice described the nature of the dispute and settlement benefits, clearly explained how class members could submit a claim for a settlement payment, explained how class members could exclude themselves from or object to the Settlement Agreement, and informed class members of the time and location of the final approval hearing.  (*See* Doc. No. 47-3 at 42.)  The long form notice included additional, consistent information, such as more detailed descriptions of class members' legal rights and options; information on who is included in the settlement class; more detailed information on each subclass; descriptions of how the cash payments will be calculated and

17

attorneys' fees; and the identities of class counsel.  (*See* Doc. No. 47-3 at 44–54.)  These notice documents contained the required information and ensured that "interested parties [were apprised] of the pendency of the action and afford[ed] them an opportunity to present their objections."  *In re NFL*, 821 F.3d at 435 (quoting *Mullane*, 339 U.S. at 314).

In sum, the Court finds that the notice efforts here satisfied the requirements of Rule 23 and due process.

## IV.    FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

Having granted final certification of the Rule 23 class and found notice adequate, the Court now evaluates the fairness of the proposed settlement.

Under Federal Rule of Civil Procedure 23(e), a court may approve a class action settlement only after "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).[2] District courts have discretion to decide whether to grant final approval to a proposed settlement. *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975).  Settlements are entitled to "an initial presumption of fairness" if "the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *In re GMC*, 55 F.3d at 785. However, when, as here, the parties seek settlement approval and final class certification simultaneously, the Court must examine the fairness of the settlement agreement "even more

---

[2] The Court is mindful that Federal Rule of Civil Procedure 23(e)(2) enumerates certain considerations for approving a class action settlement that substantially overlap with the *Girsh* factors. *See Hall v. Accolade, Inc.*, No. 17-3423, 2020 U.S. Dist. LEXIS 52632, at *19 n.12 (E.D. Pa. Mar. 24, 2020) ("The *Girsh* factors predate the recent revisions to Rule 23, which now explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements, and the earlier discussion in *Girsh* substantially overlaps with the factors now identified in Rule 23.").  Since the Court previously examined the Rule 23(e) factors at the preliminary settlement approval stage (*see* Doc. No. 27 at 14–20) and since those factors substantially overlap with the *Girsh* factors discussed *infra*, the Court does not address the Rule 23(e) factors again here.

scrupulous[ly] than usual." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir.

2004).  Here, the Court is satisfied that the proposed settlement meets the criteria for final

approval.

The Settlement Agreement is entitled to an initial presumption of fairness because:

(1) the parties negotiated the settlement at arms' length with the assistance of Judge Wells (*see*

Doc. Nos. 37, 42, 44), (2) before and during settlement negotiations, the parties exchanged

information, including formal and informal discovery, and experienced class counsel reviewed

that information (*see* Doc. No. 47-2 at ¶ 12; Doc. No. 54-1 at 13), (3) class counsel have

significant experience in similar class and consumer protection actions (*see supra* Section

II(B)(2); Doc. No. 51-1 at 19), and (4) there were no objections or opt-outs by class members

(*see* Doc. No. 54-2 at 14).  Thus, the *GMC* factors weigh in favor of approval, and so an initial

presumption of fairness attaches.

Although the settlement is entitled to an initial presumption of fairness, the Court must

consider the following factors set forth by the Third Circuit in *Girsh v. Jepson* to confirm that the

settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) stage of the
> proceedings and the amount of discovery completed; (4) risks of
> establishing liability; (5) risk of establishing damages; (6) risk of
> maintaining the class action through the trial; (7) ability of the
> defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible
> recovery; and (9) the range of reasonableness of the settlement fund
> to a possible recovery in light of all the attendant risks of litigation.

521 F.3d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463

(2d Cir. 1974)) (cleaned up).

The first factor—complexity, expense, and likely duration of the litigation—is easily met. The pleadings stage of this litigation involved contested motion practice, and even now, NVR "continues to deny vigorously the claims and conduct alleged by Plaintiffs, and any fault, wrongdoing, illegal conduct, or liability." (Doc. No. 47-3 at 3.)  If the litigation were to continue, Plaintiffs and the settlement class would face many challenges and expenses associated with class action litigation, including obtaining class certification, briefing motions for summary judgment, and litigating NVR's statute of limitations defenses. (Doc. No. 54-1 at 15.)

The second factor—the reaction of the class to the settlement—also favors final approval because in a class of 77, there were no objections or opt-outs. (Doc. No. 33 at 3); *see also Sullivan*, 667 F.3d at 321 (finding this factor weighed in favor of approval given the "minimal number of objections and requests for exclusion").

The third factor—stage of the proceedings and the amount of discovery completed—asks whether "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537.  Here, Plaintiffs' counsel conducted an extensive pre-suit investigation by interviewing members of the putative class, reviewing documents related to the sale of properties at the Greystone, reviewing NVR's marketing and advertisements for those properties, researching the establishment of the Special Assessment, researching potential causes of action, and drafting an initial Complaint. (Doc. No. 54-1 at 16–17.)  Once the pleadings closed, the parties exchanged discovery, including interrogatories and requests for production, and made numerous and substantial document productions. (*Id.*)  In addition, the parties participated in three settlement conferences with Judge Wells. (*See* Doc. Nos. 37, 42, 44.)  Accordingly, the Court finds that class counsel "have adequately developed their case and engaged in a significant degree of case development."  *In re Wawa*, 2023 WL

6690705, at *8 (holding that the third *Girsh* factor weighed in favor of approving the settlement because although the case was "somewhat early in the litigation process," the parties exerted significant effort in the settlement negotiations).  The third factor thus weighs in favor of final approval of the settlement.

The fourth and fifth factors—risks of establishing liability and damages—also favor the settlement.  Class counsel demonstrated that there is a risk of establishing liability, and in turn, damages, because this case involves a number of open questions, including the adequacy of NVR's disclosures related to the special assessment, whether any inadequacies render NVR liable as a matter of Pennsylvania law, and whether approximately half of the class members' claims are barred by the applicable statutes of limitations.  (Doc. No. 54-1 at 17–18.)  So, the Court finds that the fourth and fifth *Girsh* factors weigh in favor of approving the settlement.

The sixth *Girsh* factor—the likelihood of maintaining class certification if the action were to proceed to trial—weighs in favor of approval because there "will always be a 'risk' or possibility of decertification."  *In re Prudential Ins. Co. Am. Sales Pracs. Litig.*, 148 F.3d 283, 321 (3d Cir. 1998).

The seventh *Girsh* factor—the likelihood of NVR to withstand a greater settlement—is "most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement."  *In re Nat'l Football League Players*, 307 F.R.D. at 394 (quoting *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011)).  "However, when there is no 'reason to believe that [d]efendants face any financial instability[,] . . . this factor is largely irrelevant.'"  *Id.*  That is the case here.  (*See* Doc. No. 54-1 at 19.)

Finally, the eighth and ninth factors—the range of reasonableness of the settlement independently and when weighted against the risk of further litigation—ask the Court to consider "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538. Here, the settlement is reasonable in light of the best possible recovery and attendant risks of litigation. Notably, the settlement provides substantial relief to the settlement class in the form of cash reimbursements for the amounts that Plaintiffs allege they lost because of NVR's misrepresentations. Moreover, because this is not a common fund case, the amount that each class member recovers will not be reduced *pro rata* based on the number of claimants. Finally, the Court finds that the recovery for the "Added Six Month" subclasses—which includes a 45% reduction—adequately reflects the risk that those class members' claims would be found barred by the applicable statutes of limitations.

In addition to considering the *GMC* and *Girsh* factors, the Third Circuit has advised that "when appropriate," "it may be helpful to expand the *Girsh* factors" to include non-exclusive factors, such as "whether any provision for attorneys' fees are reasonable," and "whether the procedure for processing individual claims under the settlement is fair and reasonable." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (quoting *In re Prudential*, 148 F.3d at 323).

Here, these additional factors also weigh in favor of approving the settlement. First, because this is not a common fund case, the provision of proposed attorneys' fees and expenses totaling $90,000 does not affect the amount recovered by each class member. Moreover, the parties successfully negotiated the class settlement *before* negotiating and coming to an agreement on the provision of attorneys' fees. Second, class members have the right to opt out

of the settlement (Doc. No. 47-3 at 17–19), and the procedure for processing individual claims

under the settlement is fair and reasonable because the Settlement Agreement provides for notice

to a given class member if their claim form is deficient and gives them thirty days to cure any

such defect (*id.* at 68).  Finally, it is notable that class counsel has remained available to assist

class members with the claim process and to audit any denied claims.  (Doc. No. 51-1 at 21.)

* * *

Accordingly, the Court finds the *GMC*, *Girsh*, and *Prudential* factors weigh in

favor of finding that the class action settlement is "fair, reasonable, and adequate."

## V.    APPROVAL OF SERVICE AWARD TO THE CLASS REPRESENTATIVES

Plaintiffs request approval of a $2,000 service award to each of the two class

representatives.  (Doc. No. 51-1 at 25–26.)  "There is substantial precedent from [the Third]

Circuit supporting approval of incentive payments."  *See Somogyi v. Freedom Mortg. Corp.*, 495

F. Supp. 3d 337, 353–54 (D.N.J. Oct. 20, 2020) (collecting cases).  "Factors that courts consider

in deciding to grant incentive awards include: the risk to the plaintiff in commencing litigation,

both financially and otherwise; the notoriety and/or personal difficulties encountered by the

representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms

of discovery responsibilities and/or testimony at depositions or trial; the duration of the

litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member

of the class."  *Young v. Tri Cnty. Sec. Agency, Inc.*, No. 13-5971, 2014 WL 1806881, at *8 (E.D.

Pa. May 7, 2014) (citing *In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94–3564, 1995 WL

723175, at *2 (E.D. Pa. Dec. 4, 1995)).

Here, the Court finds that most of these factors weigh in favor of granting the requested

service awards.  According to class counsel, the representatives "were integral to the resolution

23

of this litigation, and catalysts to achieving this result for the Class." (Doc. No. 51-1 at 25.)
Although no depositions were taken in the case, Plaintiffs remained intimately involved in the
litigation and settlement negotiations, "participat[ing] in numerous conferences and meetings
with their attorneys" and "produc[ing] documents to their attorneys" after conducting ESI
searches involving 21 search terms across multiple personal devices and email accounts. (*Id.*)
Class counsel represents that both Plaintiffs were "prepared to litigate the case through trial,"
despite the risks associated with the litigation, and they have remained involved in the litigation
despite the fact that it has been pending for almost three years. (*Id.*) In addition, each Plaintiff
has personally benefitted from the settlement, with each receiving a cash payment unconnected
to the requested service award. Finally, although not a factor identified by the Third Circuit, the
Court notes that this is not a common fund case, so the service awards will not affect other class
members' recovery. Plus, the service awards were negotiated *after* the parties reached an
agreement on class recovery and have not been opposed by NVR or class members.

Accordingly, the Court finds it appropriate to grant each representative Plaintiff a service
award of $2,000 ($4,000 total).

## VI.    APPROVAL OF ATTORNEYS' FEES

Plaintiffs also request approval of attorneys' fees and expenses totaling $90,000. (Doc.
No. 51-1 at 13.) "In a certified class action, the court may award reasonable attorneys' fees and
nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).
Attorneys' fees may be calculated using either the percentage-of-recovery method or the lodestar
method. *See Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 496 (3d Cir. 2017). In common fund
cases, courts generally evaluate the attorneys' fees' reasonableness using the percentage-of-
recovery method, with a lodestar crosscheck. *Id.*

Plaintiffs argue that because this is not a common fund case, the Court should look only to the lodestar method to determine reasonableness. (Doc. No. 51-1 at 13–14.) But the Third Circuit has warned against decoupling a fee award from the total class recovery in cases where the applicable statutes do not themselves call for fee shifting. *See In re Gen. Motors*, 55 F.3d 768, 821–22 (3d. Cir. 1995) ("Although class counsel and [the defendant] contend (and the district court believed) that the fee was a separate agreement, thus superficially resembling the separate awards in statutory fee cases, private agreements to structure artificially separate fee and settlement agreements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."). This case involves neither a statutory fee shifting provision, nor a settlement amount that is difficult to calculate. *Cf. id.* (recognizing that the "the lodestar rationale has appeal where as here, the nature of the settlement evades the precise evaluation needed for the percentage of recovery method"). So, the Court considers both the percentage of recovery and the lodestar calculation in determining whether the requested fee award is reasonable.

## A.    Percentage of Recovery Method

"The percentage-of-recovery approach compares the amount of attorneys' fees sought to the total size of the fund." *Id.*  In determining whether the requested fees are reasonable under the percentage of recovery method, the Court considers seven factors:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  Courts also generally consider three additional factors:

> (8) [T]he value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drug*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *In re Prudential Ins*, 148 F.3d at 338).

Class counsel request approval of attorneys' fees in the amount of $88,683.73.  (Doc. No. 51-1 at 15–16.)  This represents approximately 23% of the monetary value of the settlement, which (when attorneys' fees are factored in) totals $386,639.54.  (Doc. No. 47-3 at 81–89.)  The Court reviews each of the *Gunter*/*Prudential* factors below.

*Factor 1: Size of the Fund Created and Number of Beneficiaries.*  The first factor weighs in favor of approval.  As noted above, when considered under the typical "fund" paradigm, the total settlement is worth more than $380,000, and each of the 77 class members is guaranteed a cash payment that is directly tied to their losses and is not dependent on the number of claims filed or the approval of the attorneys' fee award.  (Doc. No. 47-3 at 81–89.)

*Factor 2: Presence or Absence of Substantial Objections.*  The second factor also weighs in favor of approval.  To date, no objections or opt outs have been filed to the proposed settlement, nor has any class member objected to the motion for attorneys' fees.  *See Nguyen v. Educ. Computer Sys., Inc.*, No. 2:22-CV-1743, 2024 WL 3691614, at *2 (W.D. Pa. Aug. 7, 2024) (finding this factor favored approval because "only two objections were asserted, and both were withdrawn prior to the . . . final approval hearing").

*Factor 3: Skill and Efficiency of Attorneys Involved.*  Class counsel is skilled, experienced, and efficiently litigated this matter.  Indeed, class counsel have substantial

experience handling class litigation, including many actions involving violations of consumer protection laws. (*See* Doc. No. 51-1 at 18–19.) In preliminarily approving the Settlement Agreement, the Court found that Matthew D. Schelkopf, Esq., and Joseph B. Kenney, Esq., are competent to serve as class counsel. (Doc. No. 50 at 3.) Nothing has changed to undermine the Court's confidence in their abilities. So, this factor is satisfied too.

*Factor 4: Complexity and Duration of Litigation.* The fourth factor favors the attorneys' fee request because this type of fraud and consumer protection class action involves multiple complex issues of fact and law, including issues related to the adequacy of NVR's representations, whether those rise to the level of fraud or statutory violations as a matter of Pennsylvania law, and the applicability of statutes of limitations. Class counsel have litigated this case for almost three years, including briefing and arguing motions to dismiss. They have conducted lengthy interviews of Plaintiffs and other class members, exchanged written discovery with NVR before and during settlement negotiations, and reviewed documents produced by Plaintiffs and NVR about the special assessment. Thus, this factor is met here.

*Factor 5: Risk of Nonpayment.* The fifth factor also favors approval because class counsel pursued this litigation on a contingency fee basis and advanced significant out-of-pocket expenses to advance this case. (*See* Doc. No. 51-1 at 21.) "Taking such a risk on behalf of the class lends credence to the fee request . . . and thus this factor supports approval." *Corra*, 2024 WL 22075, at *14. Plus, there was a real risk of nonpayment given the complex factual and legal issues raised and the fact that NVR has strongly contested the case from its inception. Thus, this factor also favors approval.

*Factor 6: Time Devoted by Class Counsel.* The sixth factor likewise favors approval because as of January 31, 2025, class counsel had spent over 228 hours in pursuit of this

litigation.  (Doc. No. 51-1 at 21).  And in the months since, class counsel has continued to spend a significant amount of time assisting class members.  (*Id.*)

*Factor 7: Awards in Similar Cases.*  The seventh factor also favors approval.  Courts using the percentage of recovery method to calculate attorneys' fees generally approve fees ranging "from roughly 20–45%."  *Marby v. Hildebrandt*, No. 14-cv-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases).  Class counsels' requested fees represent roughly 23% of the total amount to be paid by NVR.  (*See* Doc. No. 47-3 at 81–89.)  Because courts regularly approve fee awards that represent a higher percentage of recovery than this, the seventh factor is met here.  *See Fein*, 2017 WL 4284116, at *12 (finding a fee award that represented 33% of the settlement reasonable).

*Factor 8: Value of Benefits Attributable to the Efforts of Class Counsel.*  The eighth factor supports the fee request because "[t]here is no indication that any other groups, such as government agencies conducting investigations, have contributed to this case and Settlement."  *Corra*, 2024 WL 22075, at *15; *see also Pinnell v. Teva Pharms. USA, Inc.*, No. 19-cv-5738, 2021 WL 5609864, at *1 n.2 (E.D. Pa. June 11, 2021) (finding that this factor weighed in favor of awarding the requested fees where there was no evidence that anyone other than class counsel initiated the action).

*Factor 9: Percentage that Would Have Been Awarded in Private Contingency Arrangement.*  The ninth factor supports the fee request because class counsel requests approximately 23% of the distribution to the class, which is less than the median attorneys' fees in class actions.  *See Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009) (explaining that the median attorneys' fee award in class actions is one-third, or 33%).

*Factor 10: Innovative Terms of Settlement.*  The Court finds that the tenth factor likewise weighs in favor of approval.  This case presented unique factual and legal challenges.  The settlement proposes an innovative, formula-based recovery for each class member, which accounts for the actual losses suffered by the members of the various subclasses (e.g., interests and fees paid, interests and fees that would have been paid) and the various risks of continued litigation for the members of each subclass (e.g., a 45% reduction to the award for members of the "Added Six Months" subclasses).  *See In re Suboxone*, 2024 WL 815503, at *17 (explaining that this factor weighs in favor of approval where the "settlement involved 'innovative' or unique terms").

In sum, the Court finds that the *Gunter*/*Prudential* factors weigh in favor of the requested attorneys' fees.

### B.     Lodestar Crosscheck

The Third Circuit has recommended that courts crosscheck the reasonableness of the requested attorneys' fees using the lodestar method.  *Gunter*, 223 F.3d at 195 n.1.  "The purpose of the cross-check is to ensure that the percentage approach does not result in an 'extraordinary' lodestar multiple or windfall."  *Whiteley v. Zynerba Pharms., Inc.*, No. CV 19-4959, 2021 WL 4206696, at *13 (E.D. Pa. Sept. 16, 2021) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001)).  "The lodestar method 'multiplies the number of hours counsel worked on the case by a reasonable hourly billing rate for such services,' and compares that amount to the attorneys' fees sought."  *Halley*, 861 F.3d at 496 (quoting *Sullivan*, 667 F.3d at 330).

Class counsel report that they spent a total of 228 billable hours on this case up until January 31, 2025.  (Doc. No. 51-1 at 16–17.)  This yields a collective lodestar of $124,755.  The chart below summarizes the time spent on this case by class counsel.

| Name | Role | Hourly Rate | Hours | Lodestar |
|------|------|-------------|-------|----------|
| Matthew Schelkopf | Partner | $825 | 9.6 | $7,920 |
| Joseph Kenney | Partner | $625 | 129.6 | $81,000 |
| Mark DeSanto | Associate (former) | $350 | 30.8 | $17,710 |
| Alice Elmer | Associate (former) | $350 | 2 | $750 |
| Juliette Mogenson | Associate | $350 | 44.9 | $15,715 |
| Rachel Thomas | Paralegal (former) | $150 | 11.4 | $1,710 |
| **Total** | | | **228.3** | **$124,755** |

(Doc. No. 51-2 at 4.)  This chart does not account for any billable time that class counsel have spent on this case since January 31, 2025.  (*Id*.)  Since then, counsel have assisted class members with the claims process, answered questions related to the settlement, worked on their brief in support of final approval, and prepared for the final approval hearing.  (Doc. No. 51-1 at 20–22.)  Plus, they will have to continue to expend time managing and monitoring the settlement and the claims process.  (*Id.*)  So, their total amount of billable hours and lodestar will be higher than the reported amount.  *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2024 WL 815503, at *17 (E.D. Pa. Feb. 27, 2024) ("In addition [to the billable time already expended], Class Counsel will undoubtedly need to spend additional hours in order to monitor and administer the Settlement and final closing of this case.").

The Court finds that class counsel's total billable hours are reasonable.  Class counsel spent 228 hours working on this case.  (Doc. No. 51-2 at 4.)  Their time was spent on pre-suit investigation, drafting the initial and amended complaints, briefing and arguing the motions to

dismiss, exchanging pre-mediation discovery, preparing for and participating in mediation, negotiating and drafting the settlement agreement, and coordinating with the settlement administrator to facilitate the notice and claims processes.[3]  Plus, as noted above, class counsel will spend additional time monitoring and administering the settlement in the weeks to come. Thus, the Court finds that the total number of billable hours is reasonable.

The Court further finds that class counsel's hourly rates are reasonable.  As set forth in Joseph B. Kenney, Esq.'s declaration, the hourly rates charged by class counsel appear to track the "position, experience, level, and location" of the lawyers and paralegals with the highest rate at $825 per hour for Matthew Schelkopf and other hourly rates "progressively working downward."  *In re Suboxone*, 2024 WL 815503, at *17; (Doc. No. 51-2 at 4).  Courts in this Circuit have found similar rates reasonable.  *See, e.g.*, *Fulton-Green*, 2019 WL 4677954, at *12 (concluding that class counsel's rates were reasonable when they ranged from $202 to $975 per hour); *In re Suboxone*, 2024 WL 815503, at *17 (concluding that class counsel's rates were within the reasonable range for their experience and for the region when "the highest rate was at $1550 per hour"); *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc., et al.*, No. 12-cv-00993 (M.D. Pa. May 19, 2023) (Doc. No. 304; Doc. No. 309) (granting final approval and award of attorneys' fees, approving hourly rates of up to $1,100, where several attorneys' rates were at or above $875).

The lodestar crosscheck yields a negative multiplier of roughly 0.71 because the lodestar ($124,755) is higher than the requested fee ($88,683.73).  "A lodestar multiplier of less than one, like the lodestar multiplier here, reveals that the fee request constitutes only a fraction of the

---

[3] During the final approval hearing, class counsel submitted detailed time records for the Court to review *in camera.*

work that the attorneys billed and thus favors approval." *Altnor*, 197 F. Supp. 3d at 767

(citing *Carroll v. Stettler*, No. 10–2262, 2011 WL 5008361, at *8 (E.D. Pa. Oct. 19, 2011)).  So,

the Court finds that the lodestar cross check also counsels in favor of approving the requested

attorneys' fees.

* * *

Having considered the *Gunter*/*Prudential* factors and the lodestar crosscheck, the Court

finds that the fee request of $88,683.73 is reasonable.  Thus, the Court will approve a payment of

$88,683.73 to class counsel as attorneys' fees.

## VII.    APPROVAL OF CLASS COUNSEL'S EXPENSES

Plaintiffs last requests that the Court approve class counsels' reimbursement request of

$1,316.27 in litigation expenses.  (Doc. No. 51-2 at 5.).  These expenses include fees for filings,

service, document review hosting, and parking.  (*Id.*)  These expenses are reasonable, and neither

NVR nor any class member objected to the reimbursement of these expenses, so the Court will

grant class counsel's request for reimbursement.  *See Erby*, 2022 WL 14103669, at *17

(approving "reimbursement for $22,004.82 in out-of-pocket litigation expenses"); *see also*

*Stechert*, 2022 WL 2304306, at *15 (approving fee request for $22,004.82 in litigation expenses,

which "include[d] filing fees, service of process fees, expert and professional services fees,

deposition expenses, PACER research, travel fees, and administrative expenses such as printing,

photocopies, and similar items").

## VIII.    CONCLUSION

For the reasons above, the Court grants Plaintiffs' motion for final approval of the class

settlement agreement and motion for approval of Plaintiffs' request for an award of attorneys'

fees, reimbursement of expenses to class counsel, and a service award in the amount of $2,000 to each class representative.  An appropriate order follows.